UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BAGWELL,<br>　　Plaintiff,<br><br>　　　v.<br><br>CBS CORPORATION, et al.,<br>　　Defendants. | 2:19-CV-08423-DSF (AS)<br><br>Order DENYING Plaintiff's Motion to Remand (Dkt. 15) and DENYING in part and GRANTING in part Defendant's Motion to Dismiss (Dkt. 14) |

　　Defendant CBS Corporation (CBS)[1] removed this case based on federal question jurisdiction and diversity jurisdiction, Dkt. 1 (Notice), and moved to dismiss the Complaint in its entirety, Dkt. 14 (MTD). Plaintiff Brian Bagwell moves for remand, Dkt. 15 (MTR), and opposes the MTD, Dkt. 19. (Opp'n to MTD). CBS opposes the MTR. Dkt. 20 (Opp'n to MTR). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

---

[1] Defendant asserts that "Plaintiff has erroneously sued CBS Corporation, which is not his employer. . . . CBS Broadcasting Inc. is Plaintiff's employer." Notice ¶ 5. Plaintiff's arguments are inconsistent in this regard. Compare MTR at 8 (addressing the citizenship of CBS Broadcasting, Inc.) with id. at 9 (asserting Plaintiff is employed by CBS Corporation). CBS Corporation does not challenge the Complaint on this basis. Therefore, for purposes of the motions at issue, the Court uses the term CBS to refer to CBS Corporation and CBS Broadcasting Inc.

# I. FACTUAL BACKGROUND

Plaintiff is a 65-year-old African-American who has been employed by CBS as a video editor for more than forty-one years. Dkt. 1-1 (Compl.) ¶ 5. Plaintiff performed his work for CBS pursuant to a collective bargaining agreement (the CBA) between his union and CBS. Id. ¶ 30 & Exs. 2-3. The CBA contains grievance and arbitration procedures designed to resolve employment disputes. See id. Ex. 2 at 28-31, Ex. 3 at 28-32. In January 2019, CBS Television City was sold to Hackman & Associates Productions. Id. ¶ 6. As part of the Television City sale, Plaintiff, along with other CBS employees who were "working on anything production-related," was "sold" to Hackman without consent, agreement, or prior warning. Id. ¶ 7.[2] Hackman had no work for Plaintiff to do. Id. ¶ 9. The employees who were not transferred to Hackman were offered a "double buyout." Id. ¶ 8. These employees were Caucasian and had less experience, seniority, and qualifications than Plaintiff. Id. ¶ 11.

# II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by [the] Constitution and statute . . . ." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction" and "[t]he defendant bears the burden of establishing that removal is proper." Provincial

---

[2] CBS points out that Plaintiff was not "sold" to Hackman, but rather was "leased to a Hackman affiliate and ultimately would be employed by Hackman." MTD at 9 n.5. For purposes of this Order, the Court refers to Plaintiff being transferred to Hackman, without drawing a conclusion about the details of that transfer.

Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009). If a defendant fails to meet its burden of establishing the Court has subject matter jurisdiction, the suit is remanded. 28 U.S.C. § 1447(c).

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original) (citation omitted). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—

3

'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## III. DISCUSSION

### A. Diversity Jurisdiction

Federal courts have diversity jurisdiction where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. §§ 1332, 1441. A corporation is a citizen of both its state of incorporation and the state in which its principal place of business is located. 28 U.S.C. § 1332(c)(1). The parties do not dispute that the amount in controversy exceeds $75,000, that Plaintiff is a citizen of California, or that CBS is incorporated outside of California.[3] The parties dispute, however, whether CBS's principal place of business is California or New York.

A corporation's "principal place of business" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010). "[I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and

---

[3] CBS Corporation is a Delaware corporation and CBS Broadcasting Inc. is a New York Corporation. Dkt. 1-3 (Oldis Decl.) ¶¶ 3-4.

4

coordination, *i.e.,* the 'nerve center,' and not simply an office where the corporation holds its board meetings." Id. at 93.

CBS Senior Vice President of Human Resources for CBS Corporation, Kevin Oldis, declared under penalty of perjury that the "officers [of CBS Corporation and CBS Broadcasting Inc.] direct, control and coordinate the corporation[s'] activities primarily from New York" and that for both corporations the "corporate headquarters and principal place of business are located in New York." Oldis Decl. ¶¶ 3-4. Oldis further declared that "[t]he vast majority of the senior executives of CBS Corporation have their primary offices in New York," that "finance, accounting, and human resources . . . are performed primarily in New York," and "the legal department . . . is located primarily in New York." Id. ¶ 3. Specifically, "CBS Corporation has approximately thirteen senior executives who direct the activities of the corporate entity . . . [and] approximately ten reside and primarily work out of New York." Dkt. 20-2 (Supp. Oldis Decl.) ¶ 3.

Plaintiff, on the other hand, declared that no "employee from the state of New York direct[ed], control[ed] or coordinate[d] the corporation's activities at CBS Television City in California," Dkt. 15 (Bagwell Decl.) ¶ 12, and Plaintiff's counsel declared that "CBS Broadcasting, Inc[.] is incorporated in New York and it[s] principal place of business is in California" and "CBS's high level officers who directed and controlled and coordinated the corporation work and reside in the State of California." Dkt. 15 (Haney Decl.) ¶¶ 9-10. CBS's objections to this evidence, Dkt. 20-1 (Objs.) ¶¶ 5-6, are SUSTAINED.[4]

---

[4] Defendant objected to many of the statements included in the declarations submitted in support of Plaintiff's MTR. The Court addresses only those relevant to the Court's analysis. To the extent the Court relies on a fact, it

Plaintiff also declares that two CBS executives, Michael Klausman, former Executive Vice President and Chief Operating Officer at CBS,[5] and Glenn C. Oakley, the Executive Vice President of Operations and Engineering at CBS, work and reside in California.[6] Bagwell Decl. ¶¶ 10-11. Plaintiff does not set forth any foundation for these statements, and CBS's objections to these paragraphs, Objs. ¶¶ 1-2, are SUSTAINED. Moreover, that one executive "had several conversations with plaintiff regarding his employment status" and the other "had decision making authority over Plaintiff's employment status," Bagwell Decl. ¶¶ 10-11, has no bearing on whether the corporation's officers direct, control, and coordinate the corporation's activities, and does not disprove the evidence submitted by CBS that the majority of the officers who control the corporation's activities work out of the corporations' New York headquarters.

Plaintiff further states that he was employed in Los Angeles for many years, Bagwell Decl. ¶ 13, that his paycheck lists CBS Broadcasting Inc., with a Los Angeles address, see id., and that

---

has overruled any objection to the evidence supporting that fact. The Court notes that the declarations by Plaintiff and his counsel both purport to be based on "personal knowledge." But it is apparent that neither actually has personal knowledge of many of the facts stated – or at least no foundation for that knowledge is established. Counsel is cautioned to be more careful in the future about establishing foundation for facts asserted in declarations.

[5] CBS asserts that Mr. Klausman "has never been Chief Operating Officer of CBS Corporation or CBS Broadcasting Inc." and has "never been an officer or employee of CBS Corporation." Supp. Oldis Decl. ¶ 6. However, it does not dispute Mr. Klausman was employed by CBS Broadcasting Inc. and lives and works in California.

[6] CBS disputes that Mr. Oakley works or resides in California. Instead, Oldis declares that Mr. Oakley "lives and primarily works in New York." Supp. Oldis Decl. ¶ 7.

his paycheck is "processed" in Los Angeles, id. ¶ 14.  At best, this evidence shows that CBS has a Los Angeles office that is listed as the employer on the paycheck of its Los Angeles employees.  It does not show that the Los Angeles office is the "nerve center" of CBS.  This type of argument is one reason the Supreme Court adopted the nerve center test, rather than a business activity test.  See Hertz, 559 U.S. at 95 (Because "a corporation's general business activities more often lack a single principal place where they take place" and "the corporation may have several plants, many sales locations, and employees located in many different places," equating the nerve center with a corporation's headquarters will be simpler to apply than attempting to "determine which of these different business locales is the 'principal' or most important 'place.'").

Similarly, Plaintiff's counsel's declaration that "CBS Broadcasting, Inc[.] has been located [i]n Los Angeles . . . for over 50 years" and "employs thousand[s] of employees in the state of California," Haney Decl. ¶ 11, is irrelevant to determining the corporation's principal place of business.  The existence of a Los Angeles office with thousands of employees does not mean that location is the "nerve center."  See Starr Indem. & Liab. Co. v. Rolls-Royce Corp., 725 F. App'x 592, 593-94 (9th Cir. 2018) (Even if "the work of [one] office is essential to the most visible aspect of [the corporation's] corporate activities . . . this is not a reason to supplant the corporate headquarters as the principal place of business.").

CBS has met its burden to demonstrate that there is complete diversity among the parties.

## B. Federal Question Jurisdiction & Preemption[7]

For the Court to have federal question jurisdiction over a complaint, the complaint must arise under federal law. 28 U.S.C. § 1331. Ordinarily, "[t]o determine whether the claim arises under federal law, [courts] examine the 'well pleaded' allegations of the complaint and ignore potential defenses." Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 6 (2003). However, there is an exception to the well-pleaded complaint rule for federal statutes that completely preempt a plaintiff's state law claims. Id. at 8. Here, Defendants assert that Plaintiff's state law claims are completely preempted under Section 301 of the Labor Management Relations Act (LMRA), and, therefore, arise under federal law.

Section 301(a) provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement." Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987) (internal citations omitted). To determine if a claim is preempted by Section 301, courts apply a two-step test. First, the court considers "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 387 (1987). "If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." Id. If "the right exists independently of the CBA, [the court] must still

---

[7] Although the Court has diversity jurisdiction, it must consider whether the claims are preempted in deciding Defendant's motion to dismiss.

consider whether it is nevertheless substantially dependent on analysis of a collective bargaining agreement." Id. (internal quotation marks and citations omitted.) "If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." Id. at 1059-60. "A court's determination of whether a state law claim is preempted by §301 'must focus . . . on whether [the state law claim] confers non-negotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state law] claim is inextricably intertwined with consideration of the terms of the labor contract.'" Firestone v. S. Cal. Gas Co., 219 F.3d 1063, 1065 (9th Cir. 2000) (alternations in original) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985)).

### 1. Age and Race Discrimination (First through Fourth Causes of Action)

Plaintiff asserts four causes of action alleging that CBS discriminated against him, or failed to prevent discrimination against him, on the basis of race and age, by transferring him to Hackman. See Compl. ¶¶10, 13-28. CBS concedes that generally such claims are not preempted by the LMRA. See Opp'n to MTR at 5; MTD at 6 n.4. CBS asserts, however, that the discrimination claims here should be treated differently, see MTD at 5; Opp'n to MTR at 5-6; Notice ¶¶ 9-10, because Plaintiff alleges he "was sent to Hackman" not only "based on his race [and] age," but also "to get him out of the way because CBS knew that it had failed to pay [Plaintiff] raises . . . to which he was contractually entitled pursuant to his collective bargaining agreement," Compl. ¶ 10.[8]

---

[8] CBS notes additionally that the CBA also precludes race and age discrimination. MTD at 6 n.3. But that is not relevant to the preemption analysis. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 412-13 (1988) ("[T]he mere fact that a broad contractual protection against

9

Therefore, CBS argues, "[t]he central premise of this allegation is that Defendant did not pay Plaintiff in accordance with the CBA and so it discriminated against him." MTD at 6; see also Opp'n to MTR at 6 (same); Dkt. 21 (Reply) at 5 (same).

This misapprehends Plaintiff's claims. Plaintiff alleges he was "sold" to Hackman, rather than offered the buyout, at least in part because of his age and race, and therefore was discriminated against. The Court need not look to the CBA to determine if the decision to transfer Plaintiff to Hackman constituted discrimination based on race or age. This is not like the cases cited by CBS. See Reply at 4-5. Plaintiff is not alleging a discriminatory application of a CBA provision that requires interpretation, cf. Madison v. Motion Picture Set Painters & Sign Writers Local 729, 132 F. Supp. 2d 1244, 1253 (C.D. Cal. 2000) (To prove discrimination, plaintiff would have to show that defendant did not follow the grievance procedures in the CBA), nor is CBS asserting a non-discriminatory reason for the adverse employment action explicitly based on the CBA, cf. Audette v. Int'l Longshoremen's & Warehousemen's Union, 195 F.3d 1107, 1112 (9th Cir. 1999) ("[N]on-discriminatory, legitimate, business justification . . . necessarily implicate[s] provisions of the CBA").

It is true that the Complaint contains a third purported reason for which Plaintiff was transferred to Hackman: that CBS owed him wages under the CBA. But that does not mean the race and age discrimination claims are "substantially dependent on

---

discriminatory [] or retaliatory discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract."); see also Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 969 (9th Cir. 2001), as amended (Aug. 27, 2001) ("That a claim involves an issue theoretically subject to collective bargaining is irrelevant if the specific claim at issue may be resolved without interpretation of the CBA").

analysis" of the CBA. It only shows that there are three separate reasons allegedly underlying the transfer to Hackman. Therefore, because Plaintiff's race and age discrimination claims are based on a state law right that does not substantially depend on any analysis or interpretation of the CBA, Causes of Action One through Four are not preempted. See Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748-49 (9th Cir. 1993) (Actions asserting discrimination under FEHA are "independent of collective-bargaining agreements," are "'nonnegotiable' and 'cannot be removed by private contract,'" and therefore CBAs "neither create[] the right . . . nor . . . remove or alter that right." This is true even if the CBA "will likely be referred to by [the parties] to determine the terms and conditions of her employment" where the "underlying cause of action is that [the defendant] discriminated against her in applying and/or altering those terms and conditions." (internal citations omitted)).

CBS additionally argues that the discrimination claims must be dismissed because they do not sufficiently allege an "adverse employment action." MTD at 8 (quoting Horsford v. Bd. of Trustees of Cal. State Univ., 132 Cal. App. 4th 359, 373 (2005)). An adverse employment action extends beyond "termination or demotion" to "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1054 (2005). An adverse employment action is actionable if it results in "changes in terms and conditions of employment" that are "both substantial and detrimental." Horsford, 132 Cal. App. 4th at 373. "[T]he phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment

11

discrimination that the FEHA was intended to provide." Yanowitz, 36 Cal. 4th at 1054.

Again, CBS appears to misunderstand Plaintiff's claim.[9] Plaintiff is not claiming that the failure to offer a buyout, standing alone, is an adverse employment action, or that CBS's failure to give Plaintiff the choice between a buyout and "continued employment" is an adverse employment action.[10] Crucially, Plaintiff alleges that Hackman had no work for Plaintiff to do. Compl. ¶ 9; see also Opp'n to MTD at 21 (Plaintiff "changed job duties[] and was assigned no work"). Therefore, he was not really offered "continued employment" instead of the buyout, as CBS argues. When an experienced employee is removed from his position and "transferred to . . . a department in which he has no training or expertise (and in which position he was inferably expected to fail), the terms and conditions of employment have been adversely changed" and "the changes were substantial and detrimental." Horsford, 132 Cal. App. 4th at 374; see also Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Transfers of job duties and undeserved performance ratings, if proven, would constitute [cognizable] 'adverse employment decisions'"); Patten v. Grant Joint Union High Sch. Dist., 134 Cal. App. 4th 1378, 1389 (2005) (transfer from position as middle school principal in a large underperforming school to a small high-achieving school "could be

---

[9] Indeed, in the Reply at 7-8, CBS continues to ignore paragraph 9 of the Complaint, which alleges the adverse action at issue, instead focusing only on the paragraphs related to the buyout.

[10] In a footnote, CBS appeared to understand this by acknowledging that, rather than relying solely on the denial of a buyout, "Plaintiff's allegations of Defendant's wrongdoing are focused on the fact that Plaintiff was identified as an employee to be leased to Hackman." MTD at 10 n.6. However, it did not address whether being "leased" to Hackman was an adverse employment action.

viewed unfavorably" because it "does not present the kinds of administrative challenges an up-and-coming principal wanting to make her mark would relish" even though "wages, benefits and duties (as set forth by job descriptions) remained the same"; "the transfer in reality was a demotion" and therefore there was a triable issue of fact as to whether the transfer was an adverse employment action). Being transferred to Hackman where Plaintiff was not assigned *any* work is clearly a substantial and detrimental change that may well affect his promotion opportunities. See Opp'n to MTD at 22 ("Having no work or responsibility . . . will not make [Plaintiff] available for promotion opportunities").

For this reason, even if the Court found the out-of-circuit cases cited by CBS to be persuasive, they are inapplicable here because in each case the employees who did not receive a buyout or severance maintained their employment on similar conditions. See Cooney v. Union Pac. R. Co., 258 F.3d 731, 733-34 (8th Cir. 2001) (No adverse employment action in denying a buyout application where plaintiffs continued working for the employer and retained the same responsibilities and compensation); Jones v. Reliant Energy-ARKLA, 336 F.3d 689, 691-92 (8th Cir. 2003) (An employer's decision to give some employees, but not others, the choice of maintaining employment or resigning with severance is not an adverse employment action when the plaintiff did not "suffer[] a reduction in responsibilities or pay" and did not argue that relocation alone "constitutes an adverse employment action."); E.E.O.C. v. Sears, Roebuck & Co., 883 F. Supp. 211, 214 (N.D. Ill. 1995) (Employees who were given the choice to resign and take a severance or retain their prior positions did not suffer any adverse treatment because they kept their former jobs).

While "assignment to a less-preferred position *alone*" may not "constitute[] an adverse employment action," Malais v. Los

Angeles City Fire Dep't, 150 Cal. App. 4th 350, 358 (2007),[11] assignment to a position that does not offer any work goes beyond mere preference. The cases cited by CBS are not persuasive.

Plaintiff's continued employment at Hackman where he received no work, if proven, would be sufficient to demonstrate an actionable employment action. CBS's motion to dismiss the First through Fourth Causes of Action is DENIED.

### 2. Labor Code § 210 (Fifth Cause of Action)

Plaintiff alleges that CBS violated California Labor Code Section 210 through its "intentional and willful failure to pay Bagwell at the agreed-upon rate" and that "the amount of benefits to which he was entitled was affected." Compl. ¶ 32. California Labor Code Section 210 provides a penalty to be recovered by the Labor Commissioner for failure to pay wages pursuant to an enumerated list of Labor Code Sections. Cal. Labor Code § 210(a).[12] Specifically, Section 210 provides penalties for failing

---

[11] In Malais, a firefighter was eligible to be assigned to either special duty or platoon duty. 150 Cal. App. 4th at 354. "Both classes receive equal pay and possess equal promotional opportunities," but the firefighter wanted "only to work in platoon duty," where he was assigned prior to his disabling injury, "because he prefers firefighting, the platoon work schedule, and the atmosphere of working as part of a team of firefighters to the typical special duty assignment business-office work environment." Id. at 354-55. Despite his preference, the firefighter was assigned to special duty. Id. at 355.

[12] Additionally, any action under California Labor Code Section 210 must be brought "in the name of the people of the State of California and the Labor Commissioner." Cal. Labor Code § 210(b). Plaintiff does not appear to have brought his claims as a private attorney general; he brings them as individual claims. See Opp'n to MTD at 18 (Plaintiff will "pursue [his] unpaid wages under the Fifth Cause of Action under the California Labor Code Wil[l]ful Failure to Pay"). Because CBS does not challenge the Fifth Cause of Action on this ground, the Court does not address it. It is not the

14

to timely provide wages and for paying disparate wages based on race or sex. See Cal. Labor Code § 201.3 (timing of pay periods for temporary service employees), § 204 (timing of pay periods for employees not addressed in any other section), § 204b (timing of pay periods for employees paid on a weekly basis prior to provision of services), § 204.1 (timing of pay periods for commissioned car salesmen), § 204.2 (timing of pay periods for salaried professionals who work more than 40 hours a week), § 205 (timing of pay periods for agricultural and domestic workers who live at the employer's premises), § 205.5 (timing of pay periods for other agricultural employees), and § 1197.5 (prohibiting wage discrepancies based on race or sex).

The Complaint does not state which underlying Labor Code provision was allegedly violated, and none of the enumerated sections applies to an underpayment of wages or benefits owed pursuant to a CBA. Plaintiff does not allege that he was not paid according to the appropriate pay period schedule, or that he was paid less than his colleagues due to his race, but rather that he was not paid the amount owed to him pursuant to the CBA. Such a claim is nothing more than a disguised breach of contract claim, regardless of Plaintiff's attempt to describe his claim as a violation of the California Labor Code. See Newberry v. Pacific Racing Association, et. al., 854 F.2d 1142, 1146 (9th Cir. 1988) ("The key to determining the scope of section 301 preemption is not based on how the complaint is framed, but whether the claims can be resolved only by referring to the terms of the bargaining agreement."); see also Allis-Chalmers, 471 U.S. at 211 (finding the preemptive effect of section 301 extends beyond suits alleging contract violations so that form is not elevated over substance allowing parties to evade the requirements of section 301). For

---

role of the Court to make parties' arguments for them. See Indep. Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003).

the same reasons as Plaintiff's breach of contract action, discussed below, the Fifth Cause of Action is preempted.[13]

Moreover, even if Plaintiff could allege that an applicable Labor Code section was violated here, the claim would still be preempted if the Court must interpret the CBA to determine whether Plaintiff was receiving the correct pay. See Firestone, 219 F.3d at 1066 (state law claim for failure to pay a "premium wage rate" for overtime work was preempted because the court would need to interpret the CBA to determine what the "regular rate" was in order to determine if plaintiffs were receiving a "premium rate"). For example, penalties based on Section 210 for a "willful or intentional violation" of the enumerated provisions

---

[13] This does not mean that claims properly brought under Section 210 are necessarily preempted. To the contrary, certain claims brought under that section would avoid preemption under Livadas v. Bradshaw, 512 U.S. 107 (1994). In Livadas, a Safeway employee did not receive her final check until three days after her discharge, contrary to California Labor Code Section 201, which requires immediate payment of wages owed. Id. at 111. California Labor Code Section 203 provides a penalty for employers who willfully violate Section 201, requiring them to pay wages to the employee "at the same rate" for the days between termination and receipt of their final check. Cal. Labor Code § 203. Notably, the employee "did not dispute Safeway's calculation of the wages owed, but sought only the penalty for the employer's late tender." Livadas, 512 U.S. at 112 n.4. The Supreme Court found that because "[t]he only issue raised by [the employee's] claim, whether Safeway 'willfully fail[ed] to pay' her wages promptly upon severance, was a question of state law, entirely independent of any understanding embodied in the" CBA, the claim was not preempted. Id. at 124-25 (second alteration in original) (citations omitted). In so holding, the Supreme Court noted that, "[t]here is no indication that there was a 'dispute' in this case over the amount of the penalty" and that a prior Supreme Court case has made clear that "when liability is governed by independent state law, the mere need to 'look to' the collective bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." Id. at 125.

would require the Court to calculate "25 percent of the amount unlawfully withheld." Cal. Labor Code § 210(a)(2). In an effort to analogize his claims to <u>Livadas</u> and <u>Burnside</u>, Plaintiff asserts that in calculating the amount unlawfully withheld, "[t]here is no dispute as to what the terms are" and "CBS has not alleged there is a dispute as to the actual terms of the CBA." MTR at 7; <u>see also</u> Opp'n to MTD at 18-19. However, CBS does dispute whether the amount sought by Plaintiff "was the appropriate wage for Plaintiff at any time during the relevant period or for the position he held." MTD at 7; <u>see also</u> Opp'n to MTR at 8. Therefore, even if Plaintiff had adequately alleged a willful violation of Section 210, the Court would need to consult more than just "a calendar," <u>see</u> Opp'n to MTD at 19; it would need to determine which position Plaintiff was qualified for at what times under the CBA.

The Fifth Cause of Action is DISMISSED without leave to amend.

### 3. Breach of Contract (Sixth Cause of Action)

Plaintiff alleges a breach of the CBA between his union and CBS. Compl. ¶¶ 37-42. A breach of the CBA is the quintessential preempted claim. See <u>Alaska Airlines Inc. v. Schurke</u>, 898 F.3d 904, 921 n.12 (9th Cir. 2018), <u>cert. denied,</u> 139 S. Ct. 1445 (2019) ("Breach-of-contract claims are the paradigmatic example" of a preempted state law claim); <u>Cramer v. Consol. Freightways, Inc.</u>, 255 F.3d 683, 689 (9th Cir. 2001), <u>as amended</u> (Aug. 27, 2001) ("[T]he use of state contract law in CBA interpretation and enforcement" is categorically preempted by Section 301). Plaintiff effectively concedes as much. See Opp'n to MTD at 14 ("PLAINTIFF is willing to amend to remove" the Sixth Cause of Action); <u>id.</u> at 18 ("Plaintiff will request permission for leave to amend his complaint to dismiss PLAINTIFF's Sixth Cause of

17

Action for Breach of Contract").[14]  Therefore, Plaintiff's breach of contract claim is preempted by the LMRA and DISMISSED without leave to amend.  See Allis-Chalmers, 471 U.S. at 219-21 (Breach of contract claim preempted by Section 301 needs to "go through the arbitration procedure established in the collective-bargaining agreement before bringing suit in court" and therefore must be dismissed if Plaintiffs "fail[] to make use of the grievance procedure established in the" CBA).[15]

### 4.  Unfair Competition (Seventh Cause of Action)

Plaintiff alleges that CBS's conduct constitutes unfair competition under the unlawful prong because "CBS has violated statutes and public policies."  Compl. ¶¶ 47, 49.  It is unclear

---

[14] Elsewhere, Plaintiff asserts that "asking the state court to enforce the Collective Bargaining Agreement certainly does not give rise to the 'interpretation' of the CBA."  MTR at 6; see also Opp'n to MTD at 17-18.  This is not only wrong, but ignores the first step of the analysis—*i.e.*, whether the right is conferred upon an employee by virtue of state law or a CBA.  Plaintiff cannot credibly assert that a claim "that he was not being paid in accordance with the CBA . . . do[es] not depend on the CBA."  MTR at 7.  Therefore, Burnside does not save Plaintiff's breach of contract claim.  491 F.3d at 1060-61, 1074 (The right to be compensated for time spent traveling between a designated meeting point and a jobsite existed as a matter of state law and there is no dispute concerning which wage rate would apply if those hours were found to be compensable).

[15] Plaintiff does not dispute that the CBA provides for a mandatory grievance procedure and arbitration for disputes "arising under" the CBA, which would include an alleged breach of the terms of the CBA.  See Opp'n to MTD at 19-20 ("[T]he CBA expressly limits the application of other grievance procedures to grievances relating to the CBA"); see also id. at 15, 18.  However, Plaintiff misapprehends the relevance of the grievance and arbitration clauses.  See Opp'n to MTD at 15-16, 19-20.  CBS is not asserting them to establish preemption, but merely to show that preempted claims should be dismissed, rather than recharacterized as Section 301 claims to be heard by a federal judge.  See Reply at 7.

which statutes or public policies underlie Plaintiff's unfair competition claim. To the extent Plaintiff refers to the "fundamental public policies" expressed by "wage and hour laws," Compl. ¶ 46, he has not adequately alleged the violation of any wage and hour law. Similarly, he has not alleged a claim for violation of Section 210, the only specific Labor Code provision addressed in the Complaint. However, to the extent Plaintiff's unfair competition claim relies on a predicate FEHA violation, Compl. ¶ 47 (unfair competition to "depriv[e] Plaintiff of rights, benefits, and privileges guaranteed to all employees under law"), his unfair competition claims can proceed.

CBS's motion to dismiss the Seventh Cause of Action is DENIED to the extent it relies on violations of FEHA and not unlisted or dismissed Labor Code violations.

## IV. CONCLUSION

The motion to remand is DENIED. The motion to dismiss the First through Fourth Causes of Action, and the Seventh Cause of Action, is DENIED. Plaintiff's Fifth and Sixth Cause of Action are DISMISSED without leave to amend.

IT IS SO ORDERED.

Date: November 25, 2019

Dale S. Fischer
United States District Judge